IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TERESA A.,**[1]

    **Plaintiff,**

v.

    Civil Action 2:23-cv-036
    Judge James L. Graham
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Teresa A., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff Reply (ECF No. 12), and the administrative record (ECF No. 8). For the following reasons, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

1

I. **BACKGROUND**

Plaintiff protectively filed her current application for benefits[2] on July 23, 2018, alleging that she has been disabled since November 21, 2015, due to uncontrolled diabetes, breathing problems, breathing problems at night, pain in hands and feet, neuropathy from diabetes, carpal tunnel in wrists, rheumatoid arthritis in hands, neck and back problems, and nodules in both lungs and thyroid glands. (R. at 582-85, 650.) Plaintiff's application was denied initially in October 2018 and upon reconsideration in February 2019. (R. at 327-43, 370-84.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 385-401.) ALJ Pamela Loesel ("ALJ Loesel") held a telephone hearing on July 14, 2020, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 229-59.) A vocational expert ("VE") also appeared and testified. (*Id.*) On August 24, 2020, ALJ Loesel issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 344-62.) The Appeals Council granted Plaintiff's request for review and remanded the matter for further proceedings. (R. at 363-67.)

---

[2] The record shows that Plaintiff initially filed an application for benefits on August 22, 2013, alleging disability beginning September 15, 2012. On November 25, 2015, ALJ Thomas Wang, issued an unfavorable decision. (R. at 11, 277-92.) The Appeals Counsel denied Plaintiff's request for review on August 19, 2016. (R. at 293-99.) Plaintiff appealed her denial with this Court. *See [Teresa A.] v. Comm'r of Soc. Sec.*, S.D. Ohio Case. No. 2:16-cv-990. This Court remanded the matter for further proceedings. (R. at 12, 300-10.).

On remand, the claim was assigned to ALJ Jeffrey Hartranft ("ALJ Hartranft"). Two telephone hearings were held on February 10, 2022 and July 14, 2022, at which Plaintiff did not testify.[3] ALJ Hartranft concluded on July 25, 2022, that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act any time from November 21, 2015, the alleged onset date, through December 31, 2017, the date last insured. (R. at 8-32, 260-270, 271-76.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) This matter is properly before this Court for review.

## II.     RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to her conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

---

[3] Plaintiff was unable to testify at the hearings because she was in a nursing home with a tracheostomy. She was unable to speak and waived her appearance. (R. at 11, 262, 273.)

### III. ADMINISTRATIVE DECISION

On July 25, 2022, the ALJ issued his decision. (R. at 8-32.) The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017. (R. at 14.) At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of November 21, 2015 through her date last insured of December 31, 2017. (*Id.*) The ALJ found that, through the date last insured, Plaintiff had the following medically determinable impairments: Degenerative disc disease of the cervical and lumbar spine, Left knee osteoarthritis; Bilateral carpal tunnel syndrome; Diabetes mellitus with peripheral neuropathy; Onychomycosis; and Obesity. (R. at 15.) The ALJ further found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently push, pull, and operate hand and foot controls. She can occasionally climb ramps/stairs, but should not climb ladders/ropes/scaffolds. [Plaintiff] can frequently stoop, kneel, and crouch. She can occasionally crawl. She can frequently handle, finger and feel. She can occasionally be exposed to vibration, but should avoid unprotected heights.

(R. at 17.)

Relying on the VE's testimony, the ALJ concluded at step four of the sequential process, that through the date last insured, Plaintiff was capable of performing her past relevant work as an automobile self-service gas station attendant as generally performed. (R. at 21.) This work did not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity. (*Id.*) The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from November 21, 2015, the alleged onset date, through December 31, 2017, the date last insured. (*Id.*)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

5

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices;' on the merits or deprives [Plaintiff]] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

In her Statement of Errors, Plaintiff contends that the ALJ erred in his RFC determination because he failed to properly evaluate the opinion evidence of treating physician Phillip Short, M.D. (ECF Nos. 9 and 12). The Undersigned agrees. The Undersigned concludes that the ALJ failed to adhere to the procedural requirements of the regulations and did not

properly evaluate nor articulate the supportability and consistency Plaintiff's treating physician's opinion.

Because Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 404.1513(a), 404.1520c (2017). A claimant's RFC is an assessment of "the most [a claimant] can still do despite her limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are

7

supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 404.1520c(b)(2). Indeed, the regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. *Id.*

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)). "By contrast, 'consistency' involves comparing a medical opinion

or prior administrative medical finding with ***the evidence from other medical sources and nonmedical sources*** in the claim." *Cindy F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00047, 2022 WL 4355000, at *7 n.5 (S.D. Ohio Sept. 20, 2022) (quoting 20 C.F.R. § 404.1520c(c)(2) (emphasis added)).

The starting point for the Court's analysis is Dr. Short's opinion. Plaintiff summarized Dr. Short's opinion and treatment record. In the absence of any challenge to its accuracy by the Commissioner, the Court restates that summary here:

> [Plaintiff] was also treated for dyspnea on several occasions. In June of 2016, [Plaintiff] reported to Genesis for a consult with Dr. Phillip Short. Tr 827. [Plaintiff] complained of shortness of breath. Id. In July of 2016, [Plaintiff] returned for a follow-up on her dyspnea. Tr 836. She reported that her condition was essentially unchanged. Id. She reported continued shortness of breath on exertion. Id. In September of 2016, [Plaintiff] complained of discomfort in her throat, and that her discomfort made it feel as though she was short of breath. Id. In April of 2017, Dr. Short reported continued issues with dyspnea. Tr 851. [Plaintiff] reported poor exercise tolerance and fatigue. Id. In August, [Plaintiff] expressed her concerns that her weight gain and poor sleep contributed to her dyspnea. Tr 859. In February of 2018, Dr. Short noted that [Plaintiff]'s ongoing chronic dyspnea limited her ability to exercise and ambulate. Tr 1820. On May 22, 2018, Dr. Short reported that [Plaintiff] was requesting a prescription for a seated rollator walker due to peripheral neuropathy and dyspnea. Tr 1817.
>
> [Plaintiff] reported to Genesis for follow-up care on her type II diabetes. Tr 786. [Plaintiff] complained of numbness and burning in her feet. Tr 787. Her diabetes was reported as uncontrolled. Tr 791. In June of 2016, Dr. Short prescribed special shoes due to [Plaintiff]'s peripheral neuropathy. Tr 1992. Dr. Short noted that [Plaintiff] was sixty-one years old at the time, and that she weighed roughly 280 pounds. Tr 1993. In March of 2017, [Plaintiff] continued to complain of burning and numbness in her feet. Tr 796. Her diabetes were still reported as uncontrolled. Id. Later that year, in December of 2017, treatment notes indicated that [Plaintiff]'s diabetes was complicated by peripheral neuropathy and renal insufficiency. Tr 808. [Plaintiff] complained of fatigue, changes in vision, numbness, light sensitivity, shortness of breath, anxiety, and joint pain. Tr 809. By June of 2019, [Plaintiff] was using a rolling walker when presenting to her appointments. Tr 2008.

(ECF No. 9 at 4-6.)

> In evaluating Dr. Short's opinion, the ALJ found as follows:
>
> Phillip Short, M.D., opined that [Plaintiff] could sit, stand, and/or walk for less than 2 hours, needed to shift positions at will, needed unscheduled breaks every 10 minutes for 5-10 minutes, rarely lift and carry less than 10 pounds, and had manipulative limitations (Ex. B20F). The [ALJ] finds this assessment not persuasive. The opinion was essentially a checkbox form and it endorsed the most significant limits in many areas without citation to objective evidence and without support in treatment notes. In addition, the opinion was not consistent with the medical record. Specifically, the record shows generally only mild to moderate objective findings and symptoms, which have been responsive to regular, conservative treatment, as discussed above (Exs. B6F/6, 26, 32, 38, 45; B9F/529).

(R. at 20.)

Dr. Short, Plaintiff's treating physician, completed a medical source in 2019. Dr. Short opined restrictions that were far more limiting that what the ALJ included in the RFC. The ALJ rejected Dr. Short's more limiting opinions as unpersuasive and asserted that they were essentially checked boxes with no explanation and were inconsistent with the rest of the record. (R. at 20.) The ALJ may have superficially addressed the mandatory requirements in 20 C.F.R. § 404.1520c, but his cursory analysis of Dr. Short's opinions ultimately falls short.

On December 12, 2019, Dr. Short completed a medical source statement that limited Plaintiff to sitting, standing, and walking less than 2 hours each. (R. at 2127.) Dr. Short also opined that Plaintiff would need to take a job that allows her to shift positions at will and allow her to take unscheduled breaks every 10 minutes for 5-10 minutes. (*Id.*) Dr. Short explained that the breaks were due to her muscle weakness, pain, and numbness. (*Id.*) He also opined that Plaintiff was limited to rarely lifting less than 10 pounds and could only use her upper

10

extremities up to 5% of the time to grasp, turn, twist objects; or to reach in front of her body. (R at 2128.) Finally, Dr. Short explained that his opinions existed since approximately 2017. (*Id*.)

As set forth above, the ALJ briefly summarized Dr. Short's opinions, and then dismissed those opinions as unpersuasive. (R. at 20.) The ALJ merely described Dr. Short's opinions as checked boxes without any citation to objective evidence and without support from treatment notes. (*Id*.) The ALJ also declared that Dr. Short's opinions were inconsistent with the medical record that documented conservative treatment to which the claimant was responsive and only mild to moderate objective findings. (*Id*.) The ALJ cited to only 6 pages in the medical record in support. (*Id*.) While the ALJ may have mentioned the factors of supportability and consistency as required by the regulation, the ALJ did not adequately address those factors and did not sufficiently articulate his reasoning.

Contrary to the ALJ's assertion, while Dr. Short's opinions were mostly checked boxes, Dr. Short did provide support for his opinions. Dr. Short explained that Plaintiff suffered from diabetic neuropathy, back pain, lumbar radiculopathy, and rheumatoid arthritis. (R. at 2127.) Dr. Short's opinions were based on these impairments. Dr. Short explained that Plaintiff's symptoms consisted of back pain as well as numbness and parathesis of the legs and hands. *Id*. Those symptoms support a limited ability to sit, stand, and walk as opined by Dr. Short. Those findings also support a limited ability to lift and carry and use her upper extremities as Dr. Short opined. Dr. Short also specifically explained that his opinion regarding a need for extra breaks was due to evidence of muscle weakness, pain, paresthesia, and numbness. (R. at 2127.)

Moreover, Dr. Short's treatment notes support his opinions. By way of example, Dr. Short, in August of 2015, recorded Plaintiff's complaints of neck and arm pain. (R. at 742.) At that time, Dr. Short also noted worsening back pain with radiation down into the left upper extremity, as well as tenderness and a limited range of motion in the cervical spine. (R. at 742, 745.) Dr. Short also treated Plaintiff on several occasions for dyspnea. Dr. Short's notes continually documented issues with shortness of breath and issues with dyspnea on exertion. (R. at 827, 851, 859.) Dr. Short's notes documented ongoing dyspnea that limited Plaintiff's ability to exercise and ambulate. (R. at 1820.) He eventually prescribed a seated rollator walker. (R. Tr 1817.) Dr. Short's notes documented ongoing treatment for type II diabetes and peripheral neuropathy. Dr. Short reported her diabetes as uncontrolled. (R. at 791.) Dr. Short prescribed Plaintiff diabetic shoes due to her peripheral neuropathy. (R. at 1996.) At that time, Plaintiff was 61 years old and weighed about 280 pounds. (R. at 1993.) Even with special shoes, Dr. Short's subsequently noted continuing numbness and burning in Plaintiff's feet, and her diabetes was still being reported as uncontrolled. (R. at 796.) By the end of 2017, Dr. Short noted that Plaintiff's diabetes complicated by peripheral neuropathy and renal insufficiency. (R. at 808.)

Dr. Short's treatment documented ongoing issues diabetes, peripheral neuropathy, and spinal problems which align with the impairments Dr. Short listed on the medical source statement. His notes documented issues with back pain, numbness, and paresthesia as he explained on the medical source statement. These objective medical findings reported within Dr. Short's treatment notes support his opinions to limit Plaintiff's ability to sit, stand, walk, lift, carry, and use her upper extremities. Yet the ALJ failed to analyze any of it in assessing the

supportability factor. Instead, the ALJ issued a conclusory statement declaring that Dr. Short's opinions were not supported. The Undersigned concludes that the ALJ failed to properly address Plaintiff's treating source's opinion under 20 C.F.R. § 404.1520c and to adequately explain his reasoning.

> As one court described it:
>
> Because of the greater latitude afforded ALJs under the new regulations, the importance of cogent explanations is perhaps even more important . . . . [F]aithful adherence to the "articulation" requirement of the new regulations is vital to maintaining the guarantee of the rule of law. As courts have explained, " '[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' " *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

*Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 908 (E.D. Mich., 2021). Here, simply saying that the opinion was essentially a checkbox form without support in his treatment notes without discussing them does not provide an adequate explanation for Plaintiff to understand the decision. Even the Commissioner concedes that the statement did not mention the term supportability but argues "it is clear" the ALJ found Dr. Short's opinion was not supported. (Def's Mem. in Opp. at p. 6.) The Commissioner also indicates that the ALJ's statement that the opinion was not consistent with the medical record also makes it similarly "clear" that the ALJ found he found it inconsistent with other evidence in the record. (*Id.*)

While the new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec.

11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

Here the ALJ's superficial assessment and minimal articulation of his reasoning fail to comply with the mandatory requirements of 20 C.F.R. § 404.1520c. Under these circumstances, the Undersigned cannot find that substantial evidence supports the decision.

## VI. CONCLUSION

For these reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: January 5, 2024　　　　　　　　　　　　　　　/s/ *Elizabeth A. Preston Deavers*
　　　　　　　　　　　　　　　　　　　　　　　　Elizabeth A. Preston Deavers
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge